**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DONALD GRANBERRY,           )
       **Plaintiff**         )    **C.A. No. 07-272 Erie**
                   )
         **v.**             )    **District Judge McLaughlin**
                   )    **Magistrate Judge Baxter**
CHAIRMAN OF PENNSYLVANIA BOARD   )
OF PROBATION AND PAROLE, et al.,    )
       **Defendants.**      )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION**

It is respectfully recommended that Defendants' Motion for Summary Judgment [Document # 41] be granted.

**II.**     **REPORT**

    **A.**     **Procedural History**

On or about October 9, 2007, Plaintiff Donald Granberry, an individual formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this civil rights action pursuant to 42 U.S.C. § 1983.  Named as Defendants are:  the Chairman of Pennsylvania Board of Probation and Parole ("PBPP Chairman"); Secretary of the Pennsylvania Department of Corrections ("DOC Secretary"); Records Officer for the Pennsylvania Department of Corrections ("DOC Records Officer"); and Marilyn Brooks, former Superintendent at SCI-Albion ("Brooks").

Plaintiff alleges that Defendants violated his rights under the fourth, fifth, eighth and fourteenth amendments to the United States Constitution by failing to timely correct a sentencing error and, thus, keeping him imprisoned beyond the maximum term of his sentence. (Amended Complaint at ¶¶ 19-22).  As relief for his claims, Plaintiff seeks declaratory relief and monetary damages.

On July 29, 2008, this Court issued a Report and Recommendation recommending that

Plaintiff's official capacity claims against Defendants be dismissed, but that the remainder of Plaintiff's claims be allowed to proceed. [Document # 19].  This Report and Recommendation was adopted by District Judge Sean J. McLaughlin by Memorandum Order dated August 25, 2008. [Document # 20].

The parties have since conducted discovery and Defendants have now filed a motion for summary judgment. [Document # 41].  Plaintiff has filed a motion and brief in opposition to Defendants' motion [Document ## 49 & 50], and Defendants have filed a reply. [Document # 51].  This matter is now ripe for consideration.

   **B.      Relevant Factual History**[1]

On November 18, 1983, Plaintiff was convicted of Criminal Conspiracy, Burglary, and Receiving Stolen Property at Erie County Case No. 1264-1983. (See Document # 41, Exhibit A).  The trial was held before the Honorable Jess Juliante. (Id.).  On  January 9, 1984, Plaintiff pleaded guilty, at the same case number, to one count each of Burglary and Criminal Conspiracy before the Honorable James Dwyer. (Id.).  On March 1, 1984, Judge Dwyer sentenced Plaintiff to serve one to two years in prison on the count of Criminal Conspiracy to which he pleaded guilty, followed by eight years of probation. (Id. and Document # 41, Exhibit B).  On September 27, 1984, Judge Juliante sentenced Plaintiff to serve an aggregate prison term of four to eight years on the convictions of Criminal Conspiracy and Burglary, which term was to run consecutive to the sentence that was imposed by Judge Dwyer on March 1, 1984. (See Document # 41, Exhibit C).

On September 6, 1990, Plaintiff was taken into custody pursuant to a bench warrant issued at Erie County Case No. 1402-1990. (See Document # 41, Exhibit E).  Plaintiff subsequently pleaded guilty to Retail Theft at Case No. 1402-1990, and was sentenced by the Honorable John Bozza to serve 10-24 months' incarceration, to run consecutively to the

---

[1]

The factual history recited herein has been gleaned from Defendants' Statement of Material Facts not in Dispute [Document # 42], which is essentially unopposed by Plaintiff.

sentence at Case No. 1264-1983. (Id.).

As a result of Plaintiff's arrest on September 6, 1990, the Honorable Shad Connelly revoked Plaintiff's probation at Case No. 1264-1983, and re-sentenced him on September 25, 1990, to serve a term of 7½ to 15 years of incarceration to be computed from September 6, 1990. (See Document # 41, Exhibit D).

On December 27, 1990, Plaintiff filed with the Erie County Court a *pro se* Motion for Time Credit and Corrected Commitment seeking credit against the 7½ - 15 year sentence at Case No. 1264-1983 for the time he spent serving the eight year probationary sentence imposed by Judge Dwyer. (See Document 41, Exhibit G). This motion was denied by Judge Connelly on January 16, 1991. (See Document # 41, Exhibit A at entry 49).

On July 6, 1992, the Pennsylvania Superior Court vacated the 7½ - 15 year sentence and remanded the case for re-sentencing. (See Document # 41, Exhibit A at entry 71). Judge Connelly subsequently re-sentenced Plaintiff on July 31, 1992, to serve 5-15 years of incarceration. (See Document # 41, Exhibit I). This judgment of sentence was affirmed by the Superior Court on May 18, 1994. (See Document # 41, Exhibit A at entry 89). On the same date, Plaintiff filed with the Erie County Court a *pro se* Motion for Time Credit and Corrected Commitment arguing that he was entitled to a credit against his 5-15 year sentence for time spent serving his eight year probation sentence at Case No. 1264-1983. (See Document # 41, Exhibit J). This motion was denied by Judge Connelly. (See Document # 41, Exhibit O).

On September 21, 2005, Plaintiff was granted parole by the Pennsylvania Board of Probation and Parole ("PBPP"), and was given a reparole release date of October 11, 2005. (See Declaration of Beth Klauk attached as Exhibit K to Document # 41 ("Klauk Declaration"), at ¶¶ 7-8). As part of the parole process, Plaintiff's file was reviewed on October 7, 2005, by Records Supervisor Cheryl Gill, who discovered an error in Plaintiff's sentence structure. (Id. at ¶ 11). In particular, Ms. Gill determined that Plaintiff's maximum sentence had, in fact, expired on September 6, 2005. (Id. at ¶ 12). After being notified about the error, the PBPP immediately issued a Board Action to reflect that Plaintiff's maximum sentence date was September 6, 2005. (Id. at ¶ 13; Document # 41, Exhibits U-W). As a result, Plaintiff was immediately released

3

from custody on October 7, 2005, the same date on which the error was discovered. (Klauk Declaration at ¶ 14).  Thus, the error ultimately caused Plaintiff to be held in custody 31 days beyond his maximum sentence. (Id. at ¶ 15).

Upon further review of the error, Ms. Klauk determined that the calculation mistake arose from the fact that two sentences that should have been treated as concurrent were, instead, improperly aggregated as consecutive sentences. (Id. at ¶¶ 17-22).  Specifically, Judge Bozza's December 3, 1990, sentence of 10 to 24 months' incarceration for Retail Theft at Erie County Case No. 1402 of 1990 was originally ordered to be served consecutively to Judge Connelly's September 25, 1990, sentence of 7½ to 15 years' incarceration for Burglary at Erie County Case No. 1264 of 1983. (Id. at ¶¶ 23-25).  These two sentences were properly aggregated to yield a sentence of 8 years, 4 months to 17 years; however, the sentence at Case No. 1264 of 1983 was subsequently vacated. (Id. at ¶¶ 26-27).  Thus, at that point, the only sentence Plaintiff was serving was the 10 to 24 month sentence at Case No. 1402 of 1990. (Id. at ¶ 28).

On July 31, 1992, Plaintiff was re-sentenced at Case No. 1264 of 1983 to serve 5 to 15 years of incarceration, with no indication that such sentence was to be served consecutive to the 10 to 24 month sentence at 1402 of 1990. (Id. at ¶¶ 29-32).  As a result, the new sentence was deemed to run concurrent to the sentence at 1402 of 1990. (Id. at ¶ 32).  Nevertheless, on August 12, 1992, SCI-Pittsburgh, where Plaintiff was then incarcerated, prepared a Sentence Status Change Report, which mistakenly aggregated the two sentences to yield a sentence of 5 years, 10 months to 17 years. (Id. at ¶¶ 33-34; Document # 41, Exhibits T and Y).  As a result, Plaintiff's maximum sentence date was erroneously calculated to be September 6, 2007 (17 years from the effective date of the original sentence at 1264 of 1983), rather than September 6, 2005 (15 years from the effective date of the original sentence at 1264 of 1983). (Klauk Declaration at ¶¶ 35-37; Document # 41, Exhibits T and Y).

**C.      Standards of Review**

**1.      Summary Judgment**

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted

if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under

5

applicable law.  <u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S. 242, 248 (1986).  Although the court

must resolve any doubts as to the existence of genuine issues of fact against the party moving

for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon

bare assertions, conclusory allegation or suspicions." <u>Firemen's Ins. Co. of Newark, N.J. v.</u>

<u>DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the

dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury

could return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 247-249.


## 2. *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards

than formal pleadings drafted by lawyers"  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521(1972).  If

the court can reasonably read pleadings to state a valid claim on which the litigant could prevail,

it should do so despite failure to cite proper legal authority, confusion of legal theories, poor

syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. <u>Boag v.</u>

<u>MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel. Montgomery v. Bierley</u>, 141 F.2d 552,

555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read

"with a measure of tolerance"); <u>Freeman v. Department of Corrections</u>, 949 F.2d 360 (10th Cir.

1991).  Under our liberal pleading rules, a district court should construe all allegations in a

complaint in favor of the complainant.  <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir.1997).  <u>See, e.g.</u>,

<u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

<u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because

Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is

appropriate.


## D. Discussion
### 1. Fourth Amendment Claim

Plaintiff claims that being imprisoned "well past the maximum sentence imposed ...

constituted an illegal seizure of Plaintiff's person under the 4th amendment to the United States

Constitution." (Amended Complaint at ¶ 19).  However, the United States Supreme Court has held that the Fourth Amendment has no applicability to prison cells.  Hudson v. Palmer, 468 U.S. 517, 536 (1984); see also Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001)("The *Hudson* court confirmed that the Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration").  Thus, Plaintiff is unable to maintain a claim based upon the Fourth Amendment, and the same should be dismissed.

### 2.      Fourteenth Amendment Equal Protection Claim

Plaintiff claims, in general terms, that Defendants' "refusal to correct the inaccurate sentencing records violated Plaintiff's equal protection" rights under the Fourteenth Amendment. (Id. at ¶ 21).  The Equal Protection Clause provides that no state shall "deny to any person ... the equal protection of its laws."  U.S. Const. Amend. XIV, §1.  All persons "similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Artway v. New Jersey, 81 F.3d 135, 1267 (3d Cir. 1996).  "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause."  Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994).

As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class."  Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996).

Plaintiff's allegations in this regard fail as he has not specifically identified the group to which he is similarly situated.  Instead, Plaintiff's equal protection claim is based solely on vague generalities that he has been treated unfairly.  Therefore, Plaintiff has failed to state a claim upon which relief may be granted and this claim should be dismissed.

### 3.      Fourteenth Amendment Due Process Claim

Plaintiff also claims that Defendants' "refusal to correct the inaccurate sentencing

records ... constituted cruel and unusual punishment and a due process violation under the 5th, 8th & 14th Amends. to the U.S. Constitution." (Id.).[2]  In addition, Plaintiff argues that "[t]he intentional imprisonment of Plaintiff ... past his maximum sentence ... constituted a due process violation under the 14th Amend. to the U.S. Constitution." (Id. at ¶ 22).  However, because Plaintiff has, or easily could have, brought the same claim(s) under the Eighth Amendment, his Fourteenth Amendment substantive due process claims are not cognizable under the "explicit source rule."  See Albright v. Oliver, 510 U.S. 266, 273 (1994)(holding that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims")(citation omitted); County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); and Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("Appellant's due process clause is identical to his Eighth Amendment claim; he must bring the claim pursuant to the more explicit constitutional amendment").  Accordingly, Plaintiff's Fourteenth Amendment substantive due process claims should be dismissed.

### 4.    Eighth Amendment Claim

The primary claim left for this Court to consider is Plaintiff's Eighth Amendment claim that Defendants "showed deliberate indifference in refusing to correct the sentencing error in a timely manner," and such refusal resulted in his imprisonment in excess of his maximum sentence, thus constituting cruel and unusual punishment.

The Third Circuit has recognized that "[s]ubjecting a prisoner to detention beyond the

---

[2]

The Court notes that Plaintiff's reference to the Fifth Amendment is misplaced, as said Amendment only applies to federal actors.  See, e.g., Shoemaker v. City of Lock Haven, 906 F.Supp. 230, 238 (E.D.Pa. 1995)(citations omitted)(holding that Fifth Amendment "due process clause applies only to the acts of federal government. It does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees").

termination of his sentence has been held to violate the eighth amendment's proscription against cruel and [un]usual punishment." <u>Moore v. Tartler</u>, 986 F.2d 682, 686 (3d Cir. 1993); <u>see</u> <u>also</u> <u>Sample v. Diecks</u>, 885 F.2d 1099, 1108 (3d Cir. 1989)("[T]here can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment").

Here, Defendants have acknowledged that a sentencing calculation error was made by staff members at SCI-Pittsburgh in August 1992, which resulted in Plaintiff's maximum sentence date being inaccurately documented as September 6, 2007, rather than September 6, 2005. Defendants have also acknowledged that this error was not rectified until October 7, 2005, after Plaintiff had already been incarcerated 31 days beyond his lawful maximum sentence. Despite these acknowledgments, "there can be no eighth amendment liability in this context in the absence of a showing of deliberate indifference on the part of the defendant to whether the plaintiff suffers an unjustified deprivation of his liberty." <u>Sample</u>, 885 F.2d at 1110. In particular, the <u>Sample</u> Court held that:

> to establish § 1983 liability for incarceration without penological justification, a plaintiff must demonstrate three elements. **First, a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must show a causal connection between the official's response to the problem and the unjustified detention.**

<u>Id</u>. (emphasis added).

The <u>Sample</u> court went on to observe that,

> "[a]mong the circumstances relevant to a determination of whether the requisite attitude (deliberate indifference) was present are the scope of the official's duties and the role he or she played in the everyday life of the prison. Obviously, not every official who is aware of a problem exhibits indifference by failing to resolve it. A warden, for example, although he may have ultimate responsibility for seeing that prisoners are released when their sentences are served, does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter. On the other hand, if a prison official knows that, given his or her job description or the role he or she has assumed in the

> administration of the prison, a sentence calculation problem will not
> likely be resolved unless he or she addresses it or refers it to others, it is
> far more likely that the requisite attitude will be present.

Id.  See also Whirl v. Kern, 407 F.2d 781, 792 (5th Cir. 1968)("unlike his prisoner, the jailer has

the means, the freedom, and the duty to make necessary inquiries.  While not a surety for the

legal correctness of a prisoner's commitment, he is most certainly under an obligation, often

statutory, to carry out the functions of his office.  Those functions include not only the duty to

protect a prisoner, but also the duty to effect his timely release").

   In this case, Defendants argue that Plaintiff is unable to demonstrate that they had

knowledge of any kind of sentencing error prior to the discovery of the error on October 7,

2005.  In particular, Defendants assert that Plaintiff "has not provided any evidence in discovery

that he ever – either by grievance, request to staff member or by any other correspondence or

mechanism – notified DOC that there was a sentencing error of any kind." (Document # 43,

Defendants' Brief, at p. 9).  In fact, the following excerpt from Ms. Klauk's Declaration

indicates that no such evidence exists:

> 47.   My search of [Plaintiff's DOC] file revealed that Mr. Granberry
> had never – either through grievances or through other
> correspondence – notified the DOC of any alleged inaccuracies
> or other problems with his sentence structure or entitlement to
> time credit.

(Klauk Declaration at ¶ 47).

   Plaintiff attempts to counter Defendants' argument in this regard through the filing of his

own Affidavit, in which he makes the assertion that he "continued to bring his sentencing

concerns to the Defendants attention, and the Defendants are in possession of the said

documents, as each response is officially recorded." (Document # 47 at ¶ 10).  However, this

assertion is unsupported by any documentary evidence of record.  Moreover, Defendants have

established through Ms. Klauk's Declaration that they never received any documents from

Plaintiff raising "his sentencing concerns."  Thus, Plaintiff's bald assertion that he made

Defendants aware of his sentencing concerns, without more, fails to create a genuine issue of

material fact sufficient to overcome summary judgment.[3]

Furthermore, it is apparent that the alleged sentencing error Plaintiff is attempting to challenge in this case is not the same sentencing error that has been acknowledged by Defendants.  In his Affidavit in Opposition to Defendants' Motion for Summary Judgment [Document # 47], Plaintiff claims that, after he was re-sentenced in July 1992 at Case No. 1264 of 1983, the Records Officer at SCI-Pittsburgh assigned Plaintiff a new inmate number as if he had been recommitted for a new criminal offense, rather than recommitted on a prior offense. (See Document # 47 at ¶ 9).  As a result, Plaintiff contends that his new sentence was improperly calculated from the date he was re-sentenced (July 31, 1992), rather than the effective date of his vacated sentence (September 6, 1990). (Document # 50, Plaintiff's Brief, at pp. 10-11).  Accordingly, Plaintiff claims that he was not given credit for the time he served from September 6, 1990 to July 31, 1992.  This is simply incorrect.

Plaintiff's sentencing records clearly indicate that all calculations made after the July 31, 1992, re-sentencing at Case No 1264 of 1983 referenced September 6, 1990, as the effective date. (See Sentence Status Summary attached as Exhibit C to the Amended Complaint, at p. 2; and Document # 41, Exhibit I (Court Commitment), Exhibit T (Sentence Status Change Report), Exhibit U (Sentence Status Summary), Exhibit W (Sentence Profile), and Exhibit Y (Sentence Status Summary)).  Thus, Plaintiff's challenge in this case is based upon a faulty premise that would not have given Plaintiff the relief he seeks, even if he had made Defendants aware of his challenge in this regard.  Moreover, the recalculation of Plaintiff's sentence on October 7, 2005, effectively rendered Plaintiff's argument moot, as the recalculated maximum date of September 6, 2005, was clearly based upon an effective date of September 6, 1990 and, thus, gave Plaintiff the service credit he now seeks.

---

[3]

In this regard, it is significant to note that Plaintiff has had multiple opportunities to provide documentary evidence to Defendants during discovery, either in response to requests for production of documents or at his deposition, yet he failed to do so, indicating that such documents would be in Defendants' possession. (See Document # 41, Exhibit L, Defendants' First Set of Interrogatories and Requests for Production of Documents, at ¶¶ 4 and 5; Exhibit H, transcript of Plaintiff's deposition, at pp. 10, 65-67).  Clearly, Ms. Klauk's Declaration contradicts Plaintiff's assertion that any relevant documents are in Defendants' possession.

**III.**   **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment [Document # 41] be granted

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated: November 12, 2009

cc:      The Honorable Sean J. McLaughlin
         United States District Judge

12